UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 23-CV-00809-TMR-DCK

|  |  |
|---|---|
| LINDA L. HAMMOND,<br><br>                Plaintiff,<br><br>v.<br><br>BANK OF AMERICA NA,<br><br>                Defendant. | **OPINION & ORDER** |

Dated: June 2, 2026

M. Shane Perry and Stacy Williams, Williams & Perry, PLLC, of Charlotte, N.C., argued for plaintiff Linda L. Hammond.

Nathan Jessee Taylor and Zachary L. McCamey, McGuireWoods, LLP, of Charlotte, N.C., argued for defendant Bank of America NA.

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:

Linda Hammond ("plaintiff") brings the instant action against Bank of America, N.A. ("defendant"), alleging: (1) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., arising from defendant's alleged failure to conduct a reasonable investigation and report accurate information following receipt of notice of disputes; and (2) violations of the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq.

Plaintiff seeks monetary relief, including actual damages for economic loss and emotional distress, as well as statutory and punitive damages under the FCRA. Compl. ¶¶ 64-66, 83, 135.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), defendant moves for summary judgment as to all claims. Def.'s Mot. for Summ. J. ("Def. Mot."), ECF No. 39; Def. Mem. in Supp. of Mot. for Summ. J. ("Def. Br."), ECF No. 39-1. Plaintiff cross-moves for summary judgment as to her FCRA claims. Pl.'s Mot. for Summ. J. ("Pl. Mot."), ECF No. 40.

Pursuant to Rules 7 and 16 of the FRCP and Rules 104(a), 401-403, 801-803, 807, 901 and 1002-1004 of the Federal Rules of Evidence, plaintiff moves to exclude defendant's Exhibit 1-B, the Assumption of Responsibility Form ("AOR"), and any testimony or reference to that document. Pl. Mot. to Exclude Evid. ("Pl. Mot. to Exclude") at 1, ECF No. 60.

For the reasons discussed below, the court grants in part and denies in part defendant's motion for summary judgment, denies plaintiff's motion for summary judgment and denies without prejudice plaintiff's motion to exclude.

## BACKGROUND

Plaintiff brings this action against defendant arising from defendant's reporting and collection of a credit card account ("the Account"). Compl. ¶¶ 6, 11, 31-32, 45.

The Account was opened in November 1998 and currently ends in 9220. Compl. ¶¶ 31-32. Defendant admits that its business records reflect use of the Account. Answer ¶¶ 37, 39.

The parties dispute plaintiff's liability on the Account. Plaintiff alleges that she was neither a signer on the Account nor an authorized user. Compl. ¶¶ 35-36, 40. Defendant, in turn, asserts that its record identify plaintiff as the primary cardholder and her husband as the co-applicant.[1] Def. Br. at 2.

Plaintiff and Philip Hammond were married on November 1, 1980. Compl. ¶ 34. Mr. Hammond became ill and died in 2021. Compl. ¶ 38. Plaintiff served as executor of Mr. Hammond's estate. Compl. ¶ 43.

Defendant's records indicate that, in February 2020, the balance on the Account exceeded the credit limit of $40,500 and that the last payment was received on March 3, 2020. Def. Br. at 5.

Beginning in or about November 2020, defendant furnished information to consumer reporting agencies ("CRAs") indicating that plaintiff "was obligated to pay the alleged debt and she was delinquent on the payments of the alleged debt." Compl. ¶ 41. Plaintiff contends that this reporting was inaccurate. Compl. ¶ 42.

---

[1] The parties agree that, with respect to liability for the Account, the "applicant" is the person who submits the application for the card, the "obligor" (which includes the primary and secondary cardholder) has the legal responsibility to pay off the debt on the account, and an "authorized user" is someone who has the legal right to use the card but is not obligated on the card. *See* Oral Arg. Tr. at 4:4-15; 7:10-13; 7:20-22.

In April 2021, after Mr. Hammond's death, defendant communicated to plaintiff that plaintiff was responsible for the Account.  Compl. ¶ 46.  Plaintiff disputes that she had any such responsibility.  Compl. ¶¶ 47-48.

On April 30, 2021, defendant charged off[2] the Account after several months of nonpayment and reported the charge-off to the CRAs.  Def. Br. at 6.

Beginning in June 2021, plaintiff disputed liability for the Account with defendant and, beginning in March 2022 through October 2023, with the CRAs.  Compl. ¶ 60; Def. Br. at 6-7.

Defendant received multiple Automated Consumer Dispute Verification ("ACDV") forms and investigated those disputes by comparing identifying information in its records with information provided by the CRAs, after which defendant reported the Account as accurate.  Def. Br. at 5-7.

Defendant was unable to locate the original signed application for the Account due to its document retention policy.  *See* Pl. Resp. to Def. Mot. for Summ. J. ("Pl. Resp. Br.") at 5, ECF No. 51; Def. Br. at 2.

The CRAs, namely Equifax Information Services, LLC, TransUnion, LLC, and Experian Information Solutions, Inc. were named as defendants in the

---

[2] A "charge-off" occurs when a creditor determines, after several months of missed payments, that a debt is unlikely to be collected and writes off the unpaid balance as a loss; such charge-offs may negatively impact a consumer's credit score and can remain on a credit report for up to seven years. *See What Is a Charge-Off?,* TRANSUNION (Mar. 23, 2026), https://www.transunion.com/blog/credit-advice/what-is-a-charge-off (last visited Apr. 10, 2026); Tim Maxwell, *What Is a Charge-Off?,* EXPERIAN (May 29, 2024), https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/ ((last visited Apr. 10, 2026).

complaint.  *See* Compl. ¶¶ 15-26.  The parties reached a settlement as to those defendants on August 8, 2024.  Notice of Settlement, ECF No. 30.  The claims against those defendants were dismissed with prejudice.  Notice of Dismissal, ECF No. 32.

Plaintiff's remaining claims against defendant arise under Section 1681s-2(b) of the FCRA and rest on the theory that defendant failed to conduct a reasonable investigation and furnished inaccurate information concerning plaintiff's liability on the Account after receiving notice of disputes.  Compl. ¶¶ 70-81.  Defendant denies those allegations.  Answer ¶¶ 70-81.

Plaintiff alleges that she suffered credit denials, emotional distress, and related harms as a result of defendant's alleged violation of Section 1681s-2(b).  Compl. ¶¶ 63-66.  Defendant denies liability for those alleged harms.  Answer ¶¶ 63-66.

On October 21, 2024, defendant moved for summary judgment as to plaintiff's FCRA and NCDCA claims.  *See* Def. Mot.

On October 21, 2024, plaintiff moved also for summary judgment as to plaintiff's FCRA claims.  *See* Pl. Mot.

On November 4, 2024, defendant filed its response to plaintiff's motion for summary judgment.  *See* Def. Resp. and Mem. in Opp'n. to Pl. Mot. for Summ. J. ("Def. Resp. Br."), ECF No. 45.

On November 6, 2024, plaintiff filed her response to defendant's motion for summary judgment.  *See* Pl. Resp. Br.

On November 20, 2024, defendant filed its reply to plaintiff's response to defendant's motion for summary judgment.  Def. Reply in Supp. of Def. Mot. for Summ. J. ("Def. Reply Br."), ECF No. 59.

That same day, plaintiff filed a motion to exclude defendant's Exhibit 1-B, the Assumption of Responsibility Form ("AOR"), and any testimony or reference to that document.  *See* Pl. Mot. to Exclude.

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction over plaintiff's federal claim pursuant to 28 U.S.C. § 1331, as the action arises under the FCRA, 15 U.S.C. § 1681 et seq.

The court has also supplemental jurisdiction over plaintiff's state law claim under the NCDCA, N.C. Gen. Stat. § 75-50 et seq., pursuant to 28 U.S.C. § 1367(a), because these claims "form part of the same case or controversy" as plaintiff's FCRA claim.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*

The moving party has the "initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on mere allegations or denials. *Id.* at 322 (citing FRCP 56(e)) . The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party may not "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

Where the parties file cross-motions for summary judgment, the court must consider each motion separately, applying the Rule 56 standard to each. *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014). The filing of cross-motions does not establish that no genuine dispute of material fact exists; rather, each motion must be evaluated on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## DISCUSSION

## I.      Defendant's motion for summary judgment

### A.      Fair Credit Reporting Act ("FCRA") claim

#### 1.      Legal framework

The FCRA imposes duties on entities that furnish credit information to CRAs.  15 U.S.C. § 1681s–2(b)(1).  When a CRA notifies a furnisher that a consumer disputes information in a credit report, the furnisher is required to "conduct an investigation with respect to the disputed information."  *Id.* § 1681s–2(b)(1)(A).

An investigation under § 1681s–2(b) must be "reasonable."  *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430-31 (4th Cir. 2004).   A reasonable investigation requires "some degree of careful inquiry" and may not consist of a superficial inquiry.  *Id.*  At the same time, the investigation need not resemble "full court proceedings."  *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025).

If the investigation reveals that the disputed information is "incomplete or inaccurate," the furnisher must report that result to the CRAs. 15 U.S.C. § 1681s–2(b)(1)(D).

The FCRA permits recovery of actual damages for negligent violations and actual or statutory damages, as well as punitive damages, for willful violations.  15 U.S.C. §§ 1681n(a), 1681o(a).  A willful violation includes conduct committed in "conscious disregard" of a consumer's rights.  *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001).

Actual damages may include economic loss as well as emotional distress. *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 500 (4th Cir. 2007). To recover for emotional distress, plaintiff must "reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements." *Id.* at 503.

The FCRA bars private suits under § 1681s–2(a), but permits suits under § 1681s–2(b). 15 U.S.C. § 1681s–2(c); *Saunders v. Branch Banking And Tr. Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008) (citing *Johnson*, 357 F.3d at 431-32.)

### 2. Plaintiff's claim of actual damages

### a. Additional background

Plaintiff alleges that she suffered both economic and noneconomic harm as a result of defendant's failure to conduct a reasonable investigation under § 1681s–2(b). Compl. ¶¶ 64-66, 125-35.

Specifically, plaintiff alleges that defendant's conduct caused economic harm, including a denied lease application, a denied home loan, a lower credit score and reduced credit lines. Compl. ¶¶ 65(a)–(d), 66; *see also* Oral Arg. Tr. at 36:5-13, ECF No. 74 (correcting plaintiff's reference in her brief from two denied leases to only one). Plaintiff relies on only a tenant screening report reflecting a denied lease application in support of these claims. *See* Pl. Resp. Br. Ex. F at HAMMOND0001-0006, ECF No. 51-6. Plaintiff alleges additional increased financial burdens,

including higher insurance rates, additional out-of-pocket medical expenses, and diminished earning capacity.  Compl. ¶¶ 65(e), (g), (i), (j).[3]

In addition to plaintiff's economic harm, plaintiff alleges noneconomic harm, including "emotional and mental pain and anguish."  Compl. ¶ 64.  Plaintiff claims serious physical manifestations of her emotional distress, including two stress-related cardiac episodes and a "silent heart attack."  Compl. ¶ 64(b)-(c).  Plaintiff alleges also reputational and dignitary harm arising from defendant's credit reporting.  Compl. ¶ 65.

Defendant seeks summary judgment on plaintiff's damages claims.  Def. Br. at 7.

### b.     Emotional distress damages

The court concludes that defendant is not entitled to summary judgment as to plaintiff's claim for emotional distress.

Defendant argues that plaintiff's emotional distress claims fail for two reasons: (1) plaintiff's testimony alone is insufficient to support a claim for emotional distress; and (2) plaintiff has not produced medical documentation connecting her symptoms to defendant's conduct.  Def. Br. at 19-21.

As to the first point, defendant argues that plaintiff's testimony is "of no moment under the law in this circuit."  Def. Br. at 19.  Defendant's statement misstates the law.  The Fourth Circuit has recognized that

---

[3] As discussed *infra* in Section I.A.1.c, plaintiff has not identified any record evidence substantiating the alleged economic damages.

"plaintiff's testimony can provide sufficient evidence to support an emotional distress award" as long as plaintiff "reasonably and sufficiently explain[s] the circumstances of the injury and not resort[s] [sic] to mere conclusory statements." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009) (citing *Sloane*, 510 F.3d at 503.). Accordingly, plaintiff's testimony alone may be sufficient to support her claim, provided that it meets the "reasonable and sufficient" standard.

As to the second point, defendant argues that plaintiff's emotional distress claims fail because the medical documentation that plaintiff produced "do[es] not connect Plaintiff's symptoms to [defendant's] alleged violations." Def. Br. at 21. Here again, defendant misstates the law. In *Guthrie*, the Fourth Circuit rejected the argument that a plaintiff must "provide[] evidence from a medical provider that his physical or mental symptoms were caused or exacerbated by [the defendant's] actions." *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 346 (4th Cir. 2023). The Fourth Circuit explained that medical corroboration may strengthen a claim, but it is not required where plaintiff offers sufficiently detailed testimony and factual context. *See id.* at 346-47. The court held that testimony describing specific symptoms, including anxiety, insomnia, and physical manifestations of stress, together with a factual narrative connecting those symptoms to the defendant's conduct, was sufficient to survive summary judgment. *Id.*

Here, the record shows that plaintiff has done the same. Plaintiff describes specific symptoms and supports those descriptions with medical documentation, including: (1) a letter from Novant Health's Nurse Practitioner, Heather Mathew, dated July 12, 2023, stating that plaintiff suffers from "fainting, dizziness, and chest fluttering" (Pl. Resp. Br. Ex. F at HAMMOND0290-0291); (2) a letter from Ms. Mathew, dated June 26, 2023, stating that plaintiff suffers from cardiac palpitations (Pl. Resp. Br. Ex. F at HAMMOND0294); (3) a letter from Ms. Mathew, dated January 18, 2024, stating that plaintiff suffers from Takotsubo cardiomyopathy (Pl. Resp. Br. Ex. F at HAMMOND0292); and (4) a letter from Benjamin Kirk, M.D., recommending postponement of knee surgery until plaintiff's "stress levels . . . are more manageable" (Pl. Resp. Br. Ex. F at HAMMOND0296). In her deposition, plaintiff attributed those symptoms to defendant's conduct. *See* Pl. Resp. Br. at 24 (citing Deposition of Linda Hammond at 219:11-220:18 (Ex. B)). The court holds therefore that plaintiff provides an "objective and inherently reasonable 'factual context'" for her claim of emotional distress. *Sloane*, 510 F.3d at 503.

The court concludes that a reasonable jury could find that plaintiff has sufficiently articulated emotional distress and therefore a genuine dispute of material fact exists. Defendant is not entitled to summary judgment on this issue.

### c.      Economic damages

The court concludes that defendant is entitled to summary judgment as to plaintiff's claim for economic damages.

As noted supra, plaintiff alleges that defendant's reporting and failure to investigate caused economic harm in the form of a denied lease, a denied home loan, lowered credit scores and credit limits, higher insurance rates, and loss of income. Compl. ¶ 65; Oral Arg. Tr. at 36:5-13. Plaintiff relies principally on a tenant screening report in support of those claims. *See* Pl. Resp. Br. Ex. F at HAMMOND0001-0006.

In response, defendant argues that plaintiff cannot show that defendant's conduct caused plaintiff's alleged injuries for three reasons: (1) the lease denial reflected in the tenant screening report occurred before defendant received notice of the dispute from the CRAs; (2) plaintiff's application was affected by other debts, not only defendant's reporting; and (3) plaintiff has not identified support in the record for the remaining categories of alleged economic loss. Def. Br. at 18-19; Def. Reply Br. at 9.

As to defendant's first argument, defendant states that the tenant screening report is dated June 21, 2021, whereas defendant did not receive the first ACDV until June 25, 2021. Def. Br. at 18. In order to assert liability under § 1681s-2(b), plaintiff must connect the claimed economic loss to post-notice investigation failures. *See Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 582 (D. Md. 2015), *aff'd*, 623 F. Appx 94 (4th Cir. 2015). In *Davenport*, a decision of the District of Maryland affirmed by the Fourth Circuit, the court explained that a plaintiff

"cannot recover for harms that occurred prior to the violation, i.e., prior to [the defendant's] failure to conduct a reasonable investigation upon receipt of the disputes . . . ." *Id.* Similarly, the record shows that the lease denial predated defendant's receipt of notice. *See* Pl. Resp. Br. Ex. F at HAMMOND0001-0006; *cf.* Def. Br. at 18. Although plaintiff references two emails—one from the leasing company and one from the screening company—dated June 24, 2021, and May 8, 2024, respectively, both refer to the same credit report dated June 21, 2021. *See* Pl. Resp. Br. at 25, Ex. F at HAMMOND0001-0006; *see also* Oral Arg. Tr. at 36:5-13. Plaintiff does not identify material in the record connecting that denial to conduct occurring after June 25, 2021.

As to defendant's second argument, defendant argues that plaintiff has not shown that defendant's reporting, rather than other information in plaintiff's file, caused any denial of housing or credit. Def. Br. at 18. Defendant notes that plaintiff's file contained other debts, including an unpaid medical collection and a "paid charged-off" Chase credit card, and argues that those debts may have contributed to the denial reflected in the tenant screening report. *Id.* That omission is significant. Unlike establishing a claim of noneconomic damages, establishing a claim of economic damages requires a direct link between the damages and defendant's conduct. *Sloane*, 510 F.3d at 501. In *Sloane*, the Fourth Circuit upheld an award of economic damages at which the record showed that lenders "relied exclusively on the erroneous credit information provided by" the defendant. *Id.* Here, by contrast, plaintiff does not identify material in the record

showing that any landlord or lender relied exclusively, or even primarily, on defendant's reporting after defendant received notice of the dispute.

Last, defendant argues that plaintiff has not produced support for the remaining categories of alleged economic harm, including higher insurance rates and loss of income. Def. Br. at 18; Def. Reply Br. at 9. On the present record, plaintiff has not identified documentation or other material tying those losses to defendant's alleged violation, nor was plaintiff able to do so during oral argument. *See* Oral Arg. Tr. at 39:14-24. The same problem applies to plaintiff's more general assertions of a denied home loan, lowered credit scores, and reduced credit limits. Plaintiff alleges those harms, but she does not identify material in the record from which a reasonable jury could determine that defendant's conduct caused them.

In response, plaintiff provides the general argument that "it is a decision for the jury to determine which parts of [plaintiff's] credit report caused [plaintiff's] economic damages." Pl. Resp. Br. at 24. That proposition is too general to defeat summary judgment. To defeat a summary judgment motion, plaintiff must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. On this record, plaintiff does not identify sufficient evidence from which a reasonable jury could trace the claimed economic losses to defendant's alleged failure to conduct a reasonable investigation after receiving notice of the dispute, or to its alleged failure to correct inaccurate information, as required by § 1681s-2(b). *See Sloane*, 510 F.3d at 501.

The court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Teamsters*, 947 F.2d at 119. Defendant is therefore entitled to summary judgment on plaintiff's claim for economic damages.

### 2.    Plaintiff's claims of negligent or willful violation

#### a.    Legal framework

"[A] consumer can sue a furnisher for willfully or negligently failing to reasonably investigate an indirect dispute over the accuracy or completeness of information in her credit report." *Roberts*, 131 F.4th at 246.

*Johnson* addressed only the question of a negligent violation, holding that a creditors' failure to conduct a reasonable investigation amounts to a negligent violation of § 1681s–2(b)(1)(A). *See Johnson*, 357 F.3d at 431.

A claim of willful violation requires plaintiff to show that defendant "'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer." *Dalton*, 257 F.3d at 418 (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986)).

Plaintiff alleges both negligent and willful violation, stating "[a]s a direct and proximate result of [defendant's] willful and/or negligent refusal to comply with the FCRA . . . Plaintiff has suffered substantial loss and damage." Compl. ¶ 83.

#### b.    Claim for negligent violation

The court denies defendant's motion for summary judgment as to plaintiff's claim of negligent violation and concludes that a genuine dispute of material fact

exists as to whether defendant conducted a reasonable investigation as required under § 1681s–2(b)(1)(A).

Defendant argues that its investigation was reasonable because it consisted of matching plaintiff's identifying information—including name, date of birth, Social Security number, and address—to the information in its system of record. Def. Br. at 6.

In response, plaintiff emphasizes defendant's inability to produce the original credit application for the account and argues that "the jury will see that [defendant] did very little to find an application with [plaintiff's] signature . . . . This is not a proper investigation." Pl. Resp. Br. at 14. Plaintiff asserts that defendant either did not search its records properly or is intentionally concealing the application. *Id.* at 15 ("It did not search its records properly and it did not report its scant findings properly.").

Both parties rely on *Johnson*, where the Fourth Circuit addressed a dispute concerning liability as to an account for which the furnisher no longer possessed the original application. *Johnson*, 357 F.3d at 428. In *Johnson*, the Fourth Circuit held that a jury could find the furnisher's investigation not reasonable where the furnisher failed to inform the CRAs that defendant could not locate the original signed application. *Id.* at 432.

This Court has previously described *Johnson* as follows: "where [defendant's] investigation into consumer's [sic] dispute that she was not the obligor on the account did not include a search for and examination of the original account

application, issue of negligence was for the jury." *Schade v. MBNA Am. Bank, NA*, No. CIV. 3:04CV633-H, 2006 WL 212147, at \*5 (W.D.N.C. Jan. 26, 2006) (citing *Johnson*, 357 F.3d at 431).

Defendant argues that *Schade* overstates *Johnson*. Def. Br. at 12. Defendant argues that *Johnson* does not require a furnisher to review the original account application; arguing instead that *Johnson* holds only that a furnisher cannot rely on the absence of that application to show that its investigation was reasonable. *Id.* In *Johnson*, the defendant argued that plaintiff could not prove proximate cause because the original application had been discarded. *Johnson*, 357 F.3d at 432. The Fourth Circuit rejected that argument and held that a furnisher cannot rely on the absence of the original application to show that its investigation was reasonable. *Id.* Here, defendant seeks to limit the *Johnson* holding to that proposition. Def. Br. at 11-13. Defendant argues further that it does not rely on the absence of the application and instead relies on other information showing that plaintiff was responsible for the account. *Id.*

It is correct that *Johnson* does not impose a requirement that furnishers review specific documents in every case and does not define explicitly the outer limits of the reasonable investigation requirement. The Fourth Circuit has, however, made clear that a furnisher must conduct a reasonable investigation that addresses the substance of the consumer's dispute. *Johnson*, 357 F.3d at 430-31.

*Johnson* provides that verification of identifying information alone does not necessarily satisfy the duty to investigate where the dispute concerns legal

responsibility for an account. *See id.* at 431-32. In *Johnson,* the Court explained that facts such as a change in name, address, or payment activity may be consistent with, but do not necessarily establish, that a plaintiff is a co-obligor on the account. *Id.* Here, defendant confirmed plaintiff's name, address, date of birth and Social Security number. Def. Br. at 6, 11. That information may establish identity, but the information does not resolve whether plaintiff is legally liable for the account. Accordingly, a reasonable jury could find that defendant's investigation did not adequately address the substance of plaintiff's dispute.

Last, the Fourth Circuit has made clear that "[t]he issue of whether the agency failed to follow 'reasonable procedures' will be a 'jury question in the overwhelming majority of cases.'" *Dalton,* 257 F.3d at 416 (quoting *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995)).

The court concludes that a reasonable jury could find that defendant's investigation, which consisted only of verifying plaintiff's name, address, date of birth and Social Security number, to the information provided by the CRAs, and did not include addressing plaintiff's dispute as to the original liability for the account, was not reasonable.

As noted supra, Section 1681s–2(b)(1)(D) requires furnishers to determine whether information reported to a CRA is "incomplete or inaccurate." Defendant argues further that plaintiff's FCRA claim fails because plaintiff cannot show that defendant's reporting was inaccurate. Def. Br. at 9. By contrast, the Fourth Circuit has explained that reporting a debt without noting that it is disputed may render

the reporting inaccurate. *Saunders*, 526 F.3d at 149-50. Because a genuine dispute of fact exists as to the reasonableness of defendant's investigation, summary judgment is denied as to plaintiff's Section 1681s–2(b) claim. The court does not address the question of accuracy, and the issue is reserved for trial.

### c.   Claims for willful violation

The court denies defendant's motion for summary judgment as to plaintiff's claim for willful violation. A genuine dispute of material fact exists as to whether defendant acted willfully under § 1681n.

Defendant argues that plaintiff cannot establish willfulness for two reasons: (1) § 1681n does not define "willful violation"; and (2) under any articulation of willfulness, plaintiff cannot satisfy that requirement because defendant "reached the only reasonable conclusion it could reach: that Plaintiff was a co-obligor on this account based on the records in [defendant's] system." Def. Br. at 15-16.

In response, plaintiff argues that "[defendant] was willfully negligent for the copious reasons." Pl. Resp. Br. at 24.

The court concludes that defendant's argument does not warrant summary judgment. Defendant's argument conflates the question of willfulness with the question of reasonableness. As noted supra, *Johnson* indicates that defendant's inability to locate the original signed application and its failure to report that inability to the CRAs may support a finding that defendant's investigation was not reasonable. *Johnson*, 357 F.3d at 432. That question bears on negligent violation under § 1681s-2(b). The question of willfulness is different.

As to willfulness, the Fourth Circuit has explained that plaintiff must show that defendant "*knowingly and intentionally* committed an act in conscious disregard for the rights" of plaintiff.  *Dalton*, 257 F.3d at 418 (quoting *Pinner*, 805 F.2d at 1263) (emphasis supplied).  In *Saunders*, the Fourth Circuit applied that principle in the context of a disputed debt and held that a creditor's failure to report an ongoing dispute to the CRAs, together with an intent not to report that dispute, presented a jury question as to willfulness.  *Saunders*, 526 F.3d at 151.

The record, viewed in the light most favorable to plaintiff, contains similar facts.  Both parties' briefs and the record indicate that a dispute existed for years as to plaintiff's responsibility for the account.  *See, e.g.*, Pl. Resp. Br. at 3 ("Ms. Hammond has disputed the account for years, since she first learned that [defendant] considered her liable"); Pl. Resp. Br. at 4 (referencing Ex. A and Ex. D, arguing Mr. Hammond contacted defendant inquiring why plaintiff was listed as a co-applicant rather than an authorized user); Def. Br. at 5 ("[o]n June 9, 2021, [defendant] received a call from Plaintiff in which she disputed her responsibility for the Account for the first time and stated she was merely an authorized user"); Def. Br. at 7 ("Plaintiff continued to dispute her responsibility for the Account in telephone calls with [defendant] on March 17, 2022, March 28, 2021, July 28, 2021, and August 9, 2022.").

A reasonable jury could find from this record that defendant intentionally continued reporting the account without reflecting plaintiff's dispute.  Under *Saunders*, that record is sufficient to create a genuine dispute of material fact as to

willfulness.  Accordingly, defendant is not entitled to summary judgment on plaintiff's claim for willful violation.

### B.      North Carolina Debt Collection Act ("NCDCA")

#### 1.      Legal framework

The NCDCA prohibits unfair debt collection practices.  *See* N.C. Gen. Stat. §§ 75-50 to 75-56.  The statute provides that a debt collector may not, among other things, make false representations, engage in harassment, or use unfair or unconscionable means in connection with the collection of a debt.  *See* N.C. Gen. Stat. §§ 75-51, 75-52, 75-54.

The FCRA limits the extent to which state law claims, including claims under the NCDCA, may proceed.  *See Ross v. FDIC*, 625 F.3d 808, 817 (4th Cir. 2010). Section 1681t(b)(1)(F) preempts state laws "with respect to any subject matter regulated under § 1681s-2."  Section 1681s-2 addresses the duty of furnishers of information to provide accurate information, including investigating disputes and correcting errors.  15 U.S.C. § 1681s-2(b).  The Fourth Circuit interpreted § 1681t(b)(1)(F) broadly and explained that a state law "requirement or prohibition . . . concerning subject matter regulated under section 1681s-2" is "squarely preempted by the plain language of the FCRA."  *Ross*, 625 F.3d at 813 (internal quotation omitted).

Not all conduct covered by the NCDCA falls within the scope of § 1681s-2. Claims that arise from debt collection practices independent of credit reporting— such as harassment—do not necessarily implicate the duties governed by the FCRA

and may fall outside the preemptive scope of § 1681t(b)(1)(F).  *See Ross*, 625 F.3d at 817.  The Fourth Circuit recognized that such claims may proceed where they are based on conduct distinct from credit reporting, including debt collection calls.  *Id.*

The FCRA contains a narrow exception under 15 U.S.C. § 1681h(e), which permits certain state law claims against a furnisher to proceed where plaintiff shows that defendant acted with "malice or willful intent to injure."

### 2.    Additional background

Plaintiff alleges several violations of the NCDCA.  *See* Compl. ¶¶ 125-35.

First, plaintiff alleges that defendant made false representations by asserting that plaintiff owed a debt that plaintiff did not owe and by communicating that information to the CRAs, in violation of N.C. Gen. Stat. § 75-51(3).  Compl. ¶¶ 125-27.

Second, plaintiff alleges that defendant engaged in harassment by causing plaintiff's telephone to ring and conducting telephonic conversations with plaintiff "with such frequency as to be unreasonable under the circumstances," in violation of N.C. Gen. Stat. § 75-52(2).  Compl. ¶¶ 128-29.

Third, plaintiff alleges that defendant falsely represented the character, extent, or amount of a debt, in violation of N.C. Gen. Stat. § 75-54(4).  Compl. ¶¶ 130-31.

Fourth, plaintiff alleges that defendant attempted to collect improper fees, in violation of N.C. Gen. Stat. § 75-54(6).  Compl. ¶¶ 132-33.

Finally, plaintiff alleges that plaintiff's injuries are "attended by circumstances of fraud, malice, and/or willful and wanton misconduct," and seeks statutory damages, civil penalties, and attorneys' fees.  Compl. ¶ 135.

Defendant moves for summary judgment as to plaintiff's NCDCA claims. Def. Br. at 22-25.

### 3.     The FCRA preempts some of plaintiff's NCDCA claims

The court grants defendant's motion for summary judgment as to plaintiff's claims that defendant falsely represented the debt on the Account, attempted to collect improper fees, and falsely accused plaintiff of failing to pay a debt, under N.C. Gen. Stat. §§ 75-51(3), 75-54(4), and 75-54(6), because those claims are preempted by 15 U.S.C. § 1681t(b)(1)(F).

Defendant argues that plaintiff's NCDCA claims are preempted because the claims seek to impose state law liability for defendant's reporting of credit information, a subject regulated by § 1681s-2.  Def. Br. at 25.

In response, plaintiff argues that the § 1681h(e) exception to the preemption clause applies because defendant acted with "malice or willful intent to injure."  Pl. Resp. Br. at 27.

In *Ross*, the Fourth Circuit held that a North Carolina claim based on the "reporting of inaccurate credit information to CRAs" was "squarely preempted by the plain language of the FCRA" because the claim sought to impose a state law "requirement or prohibition" with respect to conduct regulated under § 1681s-2. *Ross*, 625 F.3d at 813.  The Fourth Circuit held further that, to the extent a Chapter

75 claim relies on a defendant's reporting of false credit information, it is preempted by § 1681t(b)(1)(F).  *Id.* at 817.

*Ross* controls here.  Plaintiff's claims under §§ 75-51(3), 75-54(4), and 75-54(6) seek to impose liability for defendant's reporting of allegedly inaccurate credit information.  Those claims therefore concern the same subject matter regulated under § 1681s-2 and are preempted by § 1681t(b)(1)(F).

Plaintiff's § 1681h(e) argument does not change that outcome.  Section 1681h(e) permits certain state law actions if the plaintiff proves "malice or willful intent to injure," but the Fourth Circuit noted that it was "not clear" that a Chapter 75 claim fell within § 1681h(e).[4]  *Ross*, 625 F.3d at 814.  The Court then held that, even assuming the provision applied, the plaintiff had not met the "high bar" of malice.  *Id.* at 816.  The Fourth Circuit emphasized that § 1681h(e) authorizes state law suits only for conduct that is "truly malicious, and not simply  careless."  *Id.* at 817.

Here too, even assuming § 1681h(e) applies, plaintiff does not identify material in the record from which a reasonable jury could conclude that defendant acted with the malice or willful intent to injure that is required under § 1681h(e).  Under *Ross*, that showing is insufficient to avoid preemption.

---

[4] The Fourth Circuit explained that, to fall within the scope of § 1681h(e), the claims must arise from conduct by: (1) CRAs; (2) users of credit reports; or (3) furnishers acting in their capacity as users of credit reports.  *Ross*, 625 F.3d at 814.  Here, as in *Ross*, defendant did not act as a user of a credit report because it did not obtain or rely on plaintiff's credit report in connection with the Account.

Accordingly, plaintiff's claims for false representation of the debt, false accusation of nonpayment, and attempts to collect improper fees, under N.C. Gen. Stat. §§ 75-51(3), 75-54(4), and 75-54(6) are preempted. Plaintiff's claim under N.C. Gen. Stat. § 75-52(2), which concerns harassment rather than credit reporting, is not preempted on this basis.

### 4. Plaintiff's harassment claim survives preemption but fails to show proximate cause

The court grants defendant's motion for summary judgment as to plaintiff's claim under N.C. Gen. Stat. § 75-52(2), because plaintiff does not identify material in the record from which a reasonable jury could conclude that defendant's alleged collection calls proximately caused plaintiff's injuries.

Defendant argues that plaintiff's harassment claim fails for two reasons: (1) plaintiff does not connect defendant's alleged collection calls to plaintiff's claimed economic and noneconomic injuries; and (2) plaintiff relies on her own statements rather than material in the record showing that defendant's conduct was a substantial factor in causing those injuries. *See* Def. Br. at 17-22.

In response, plaintiff argues that she "has testified and produced documents that demonstrate her emotional distress," and that "[i]t is a decision for the jury to determine which parts of [plaintiff's] credit report caused [plaintiff's] economic damages, and how her credit report caused her physical maladies." Pl. Resp. Br. at 24, 27. Plaintiff argues further that she "does not need an expert witness to testify concerning her emotional distress" because her "recitations have offered more than enough evidence for the jury to consider." *Id.* at 24.

Plaintiff's response does not satisfy the causation requirement applicable to her NCDCA harassment claim.[5]  Even assuming the alleged calls could satisfy § 75-52(2), plaintiff does not identify material in the record showing proximate causation.  The Fourth Circuit explained that an NCDCA plaintiff must satisfy "the three generalized requirements for all North Carolina Unfair and Deceptive Trade Practices Act claims: '(1) an unfair act (2) in or affecting commerce (3) *proximately causing injury.*'"  *Ross*, 625 F.3d at 817 (citing *Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 292, 530 S.E.2d 865, 868 (2000) (emphasis supplied)).  The Fourth Circuit explained that, to survive summary judgment, the nonmoving party must produce "fact-specific and not merely speculative" material establishing causation, and that, where multiple possible causes exist, plaintiff must identify material affording a reasonable basis for concluding that defendant's conduct was "more likely than not . . . a substantial factor in bringing about the result."  *Id.*

The Fourth Circuit's application of the causation standard is instructive.  In *Ross*, the court held that plaintiff failed to show that the defendant's alleged calls caused her injuries because "[n]o physician who has treated [plaintiff] has attributed any of her conditions to [defendant's] alleged practices."  *Id.* at 818.  The court explained also that emotional distress is "fraught with vagueness and

---

[5] Notably, the state law requirement is distinct from the showing required to establish emotional distress damages under the FCRA.  As noted supra, under the FCRA, plaintiff's own testimony, if sufficiently detailed, may support a claim for emotional distress.  *See Guthrie*, 79 F.4th at 346.  By contrast, under the NCDCA, plaintiff must identify material in the record showing that defendant's conduct proximately caused her injuries.  *See Ross*, 625 F.3d at 817.

speculation" and that "conclusory statements that the plaintiff suffered emotional distress" do not support compensatory damages. *Id.* (quoting *Price v. City of Charlotte,* 93 F.3d 1241, 1250, 1254 (4th Cir. 1996)).

Accordingly, plaintiff must identify material in the record showing that defendant's collection calls proximately caused the injuries for which plaintiff seeks relief. Plaintiff does not make that showing. Plaintiff attributes her emotional distress, at least in part, to her inability to "move from the apartment where her husband was last with her before he passed away" and to "stressful conditions she faces at home." Pl. Resp. Br. at 24. Those alternative sources of distress matter because *Ross* requires more than a mere possibility that defendant's conduct contributed to plaintiff's injuries. *Ross*, 625 F.3d at 817.

Accordingly, plaintiff fails to present sufficient material from which a reasonable jury could conclude that defendant's alleged collection calls proximately caused plaintiff's injuries. Defendant is entitled to summary judgment on plaintiff's claim under N.C. Gen. Stat. § 75-52(2).

## II.     Plaintiff's Motion for summary judgment

The court denies plaintiff's motion for summary judgment.

Plaintiff argues that no genuine dispute of material fact exists because *Johnson* "requires [defendant] to inform the CRAs that it did not have a signed application, and [defendant] has admitted that it did not inform the CRAs of this fact, and it had no signed application, and has proffered no signed application into evidence." Pl. Mot. at 3. Plaintiff argues that defendant's failure to report to the

CRAs that it did not possess the signed application entitles plaintiff to judgment as a matter of law. *Id.*

In response, defendant argues that plaintiff's motion should be denied for three reasons: (1) plaintiff does not satisfy her burden under Rule 56 because plaintiff does not support the motion with citations to material in the record; (2) plaintiff misinterprets *Johnson*; and (3) plaintiff does not address the accuracy requirement under § 1681s-2(b). Def. Resp. Br. at 3-6.

The court agrees with defendant's first and second arguments and does not reach the third. As to defendant's first argument—that plaintiff does not satisfy her burden under Rule 56—the moving party is required to identify material in the record demonstrating the absence of a genuine dispute of material fact. *See* FRCP 56(c); *see also Celotex*, 477 U.S. at 323. Plaintiff's three page motion does not cite material in the record. Instead, plaintiff states that "evidence will be presented to the Court in the Plaintiff's response to the Defendant's motion for summary judgment." Pl. Mot. at 2. That assertion is insufficient to satisfy Rule 56.

As to the second point, the court agrees that plaintiff's reading of *Johnson* is too broad. As noted supra, *Johnson* does not require furnishers to notify CRAs whenever the furnisher cannot produce an original application. Rather, *Johnson* indicates that a furnisher's failure to report that it could not locate an application *may* support a finding that the furnisher's investigation was not reasonable under § 1681s-2(b). *Johnson*, 357 F.3d at 432. That principle creates a genuine dispute of

material fact as to reasonableness.  It does not entitle plaintiff to judgment as a matter of law.

Because plaintiff does not satisfy her burden under Rule 56 and relies on a reading of *Johnson* that is too broad, the court concludes that plaintiff is not entitled to summary judgment.  In light of that conclusion, the court does not address defendant's remaining argument as to accuracy under § 1681s-2(b).

### III.    Plaintiff's motion in exclude

On November 20, 2024, plaintiff filed a motion to exclude defendant's Exhibit 1-B, the Assumption of Responsibility Form ("AOR"), and any testimony or reference to that document.  Pl. Mot. to Exclude.

Defendant argues that the motion is untimely because plaintiff failed to object to the AOR in her response to defendant's motion for summary judgment, as required under FRCP 56(c)(2).  *See* Def.'s Resp. & Mem. in Opp'n to Pl.'s Mot. to Exclude Evid., ECF No. 62, at 6.

In reply, plaintiff argues that the motion should be treated as a motion in limine, which may be filed as late as two weeks before trial.  Pl. Reply to Def. Resp. to Pl. Mot. to Exclude, ECF No. 63, at 1.

This Court has stated that the purpose of a motion in limine is to allow the court to rule on evidentiary issues in advance of trial to facilitate a fair and efficient proceeding.  *See, e.g.*, *Baumel v. Barber Power L. Grp., PLLC*, No. 3:22-CV-00170-GCM-SCR, 2023 WL 6121001, at \*1 (W.D.N.C. Sep. 18, 2023); *Tailored Chem.*

*Prods. v. DAFCO*, No. 5:21-CV-00069-KDB-SCR, 2023 WL 5944162, at *1 (W.D.N.C. Sep. 12, 2023).

No trial date has been scheduled in this case. The motion to exclude is therefore denied without prejudice.

**CONCLUSION**

For the foregoing reasons, it is hereby

ORDERED that defendant's motion for summary judgment is granted in part and denied in part; and it is further

ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that plaintiff's motion to exclude is denied without prejudice; and it is further

ORDERED that, within fourteen (14) days of the date of this Opinion and Order, the parties shall file a joint status report addressing proposed deadlines for pretrial submissions, motions in limine and trial on the remaining claims.


|  |  |
|---|---|
|  | /s/ Timothy M. Reif |
| Dated: <u>June 2, 2026</u> | Timothy M. Reif, Judge |
| New York, New York | United States Court of International Trade |
|  | *Sitting by Designation* |
|  | United States District Court for the |
|  | Western District of North Carolina |